18-1714, In Re Lilliness. Okay, I think we're ready whenever you are, sir. Good morning, Your Honors. James Lucas for the appellants, the Lilliness appellants. May it please the court. This court should reverse the board's decision finding claim one of the 157 application invalid as obvious over Mitchell and Golden. The board's decision and the board's rehearing decision are deeply flawed. I'd like to go through three central reasons why they're deeply flawed and should be reversed. First, the board finds that Mitchell suggests the dual command limitation and the mapping limitation and then says nothing else. There's no explanation as to why Mitchell suggests these two limitations. What's even more important is this is right after the board has found that Mitchell doesn't disclose expressly or inherently those limitations. So that's the first. Well, can we just turn to the opinion because at least, I mean, it's in other places too, but at least on page not appendix nine, for example, they don't say Mitchell suggests blah, blah, blah. They go on to explain it with citations to Mitchell and the abstract. So I guess. Well, my response to that would be yes, there are citations to Mitchell, but that's it. And that's right after they've already cited to Mitchell and said it doesn't disclose that limitation. And our position is that's just not enough. You can't just cite to the reference. You have to provide some type of explanation as this court's decision has been very clear as to why that limitation is suggested to one of skill in the art. And that becomes really important because if you look back and you look back at the examiner's decisions, the examiner actually found that they were inherently disclosed, which would be and the board didn't agree with that. There was an alternative, right? No, actually, the examiner twice found that both limitations were inherently disclosed, excuse me, inherently disclosed by Mitchell, then provided an alternative regarding Ma. But, but as the board, if you look at the board's decision, Ma's not at issue. The board found that Ma was just cumulative. So what happened here is the board looked at Mitchell after the examiner had found it was inherently disclosed and not supported inherently. The disclosure was not inherently disclosed. It was not supported by the examiner, the necessary, et cetera, all the requirements. What the board then did was took that limitation and Mitchell and said, no, it's not inherently disclosed. It just, so there is no disclosure in the reference. It's just suggested. And at that point, I mean, so what, if you were to affirm this, what you're saying is, well, you don't have to do it for inherency and expressly, but you can just say it's suggested. And that's enough. Can I ask you what, just in English? Sure. To just, again, this is an aside. Sure. Discuss to me the daylight between your invention and Mitchell. Is it, and let me give you something you can tell me if I'm wrong, is it just a matter of time, whether or not this comes up exactly at the time, instantaneously, when you press the button, or in Mitchell, it's coming up later, more stylized? It's actually more than that. So this invention dates back to 2001, priority date. And what we're talking about in claim one is a, let's talk like a smartphone. And what it's doing is you have a button that's already been pre-mapped to send, say, a TV to the station, the Fox station, okay? At the same time you touch that button on the display, it's also providing you, because it's been pre-stored, that the user's able to do all of this because it's been pre-stored and linked or mapped to the button. Our invention, I get that, okay. And then it shows the website. But Mitchell does a whole lot of similar stuff, they're just not doing it at the particular time in terms of a pre-mapping. Theirs seems almost a little more sophisticated. Well, no, just to be clear, it's also, you show the TV, but you're also getting immediately, like, say, the website associated with Fox on your phone. At the same time. You're talking about our invention. Our invention, yeah. I didn't want to miss that. So that's because of that pre-storage. All Mitchell's doing is, let's call it, I'm going to call it a broadcast signal, but it's not necessarily, maybe, I don't know if they were still using broadcast signals back then, but maybe, or digital. And what it's doing is, it's sending it to, the network is sending the signal, and there's a trigger. And that trigger only, so it's actually in the broadcast signal. It has nothing to do with user interaction, pressing buttons, pre-storing stuff, nothing like that. What happens is, if you go to Channel 5 on Mitchell, if there's a trigger, it has nothing to do with the user. It then allows you, the TV might be able to, or a remote might be able to let you look at some type of website, but you have to press a separate button to do that. Right, but let me just ask you. It gives you that potential option. On your application, so the novelty that we're talking about here is that you pre-store information so that when you want it, you press a button and it comes up. I mean, the way you described it, maybe it's just me. Doesn't that seem, I mean, I don't know what prior art, maybe Ma doesn't do it, but it would seem that there would be prior art that would cover that. Well, 2001, no, there's not. I mean, and to be clear, the board has found that Mitchell didn't do it, and in essence, by basically throwing out Ma, didn't do it because, first of all, they don't have any user interaction with respect to. What happens is, in Mitchell, you're not doing anything to potentially get the website or address or web content. It's just the provider might have something connected with the signal and it triggers it. So there's no user involvement. You're pressing a button to get web content. That can't be the novelty. No, it's the combination, I mean, obviously, it's the combination of claim one. What it's doing is it's giving you the functionality, being able to use a tablet or a smartphone, and having it pre-mapped before you ever get to a certain station to be able to, once you say you want to go to that station, you immediately have the web content on your phone. And you can show, and you show the program on the TV. That's the novelty. All of that together. And that just wasn't done in 2001. And so that's really... So pressing a button to get the website was known, and pressing the button to turn on the TV or get the program was known. But combining the two... I would say yes. I'm just trying to understand. Yes, it's the combination of all of that, the mapping and the, obviously, the display on the system, too. All these remotes don't even have a... With the exception of they have to use golden for even a display on the remote or a smartphone. So, yes, that was not known. And to be clear, just... They can't just... I guess the biggest issue I started with number one was they just say suggest. That's it. And they say just by just a couple of limitations, the dual command limitation and the mapping limitation. That's just not enough. The second point relates to a lack of a motivation to combine. They don't even find there was a motivation to combine Mitchell with gold. There's not... In both the decision, the final decision, and the re-hearing decision, there's never a finding that there was a motivation to combine those two references. Okay. You mentioned a moment ago that in your invention, you hit the button. It both calls up the channel and keys in the URL address so that you can access the Internet at the same time with one interaction. Yes, correct. But isn't there an embodiment of Mitchell where URL addresses presumably from earlier iterations are stored in some sort of a cache? There is. You don't always have to wait for the TV signal to come and give you a trigger with a subsequent URL interaction. You have a cache that can be... Right, but you only got that because you originally were sent the trigger from the network, let's say, or the presenter. Yeah, so maybe the first time around, you had to push two buttons, but the second time around, it's there. No, and another distinction is you still have... That requires a special dedicated button. It's not a single button that does all that combined in that second embodiment. I know what you're talking about. So that's another distinction. But I guess the only way you're going to get there to that cache is if it was originally sent by the broadcaster through a trigger. And then you have to first get to that channel just with one button and then press a second button to get to the cache. So that is another distinction in that embodiment. So anyway, just to finalize, the second argument was there's no motivation to combine. You can scan both decisions. The board never finds that you... But the examiner had a motivation to combine. And when you appealed to the board, you didn't articulate any argument related to motivation to combine, did you? I would assume we did. I'm not kidding. But even if we did not, and I can try to find that, even if we did not, the issue here is that the board switched the decisions. So I will look for the finding of that. Well, but your argument is they switched from a reference inherently discloses it to a reference suggests it. But that has nothing to do with motivation to combine the two references. The examiner articulated motivation, and I didn't see where you appealed to the board that that was incorrect. I don't think that the board is obligated to address issues that weren't raised all the time, but... To be clear, the examiner found a motivation to combine based on inherency of Mitchell and or Ma plus Golden. So actually saying that those limitations were inherently disclosed by the references. There is a very brief statement about motivation to combine. I agree with that in the examiner. The problem is that doesn't work for the board because what happened is in the original board's decision, they then changed the holding. They now say we disagree that Mitchell inherently discloses the dual command and mapping limitations. We think it just, they just say it suggests it. And so at that point, they had to offer, well, first of all, they had to offer a basis for why those references suggest the limitations. And we believe that they also have to provide a motivation to combine based on their finding that there's a suggestion in Mitchell. Respectfully, I don't agree. I don't think that makes any sense. I agree with you. A motivation to combine is necessary. Whether or not the reference inherently discloses something or suggests it, they're saying you get elements A, B, and C from this reference. Whether it is by virtue of disclosure, inherent disclosure, or suggestion, this reference teaches a skilled artist an A, B, and C. That's what they're saying. And then they're saying this other reference teaches them D and E. And they gave a motivation to combine those two references based on their having taught or suggested. I don't see, and the motivation, as I understand it, is to provide an easy and intuitive way to allow the user to recognize which icon corresponds to which station, which can eliminate guessing. I don't see how that motivation wouldn't apply equally whether there was a suggestion or an inherent teaching or an actual teaching of that element in Mitchell or Ma. I don't see a difference. I don't see why there's, I understand your argument as to why there should be an explanation for how, why Mitchell, for example, suggests dual command. I get that. There should be an explanation for that. But I don't see why they should have to address motivation to combine once they conclude that all the same references still really lead you to the same place for each element. I think it's connected, and maybe that's the confusion. I think they need to support why each limitation was suggested now by Mitchell. And I believe in doing that, they have to, I think it's part and parcel with saying based on that suggestion, the support for that, that's why you would combine that with Golden. But I mean, I see your point on the fact that they're just saying there's a disclosure of the limitations or there's a suggestion. And then the third issue, I think, is that they never really addressed the claims as a whole. You probably need to save some time for rebuttal. I don't know if you're paying attention. You're well into rebuttal time. I will do that. Thank you, Your Honors. May I please look for it? I just want to pick up on the motivation to combine issue because I think this is just a simple factual error by appellant that can be easily cleared up. In the examiner's final rejection appendix, page 155, the examiner gives a motivation to combine Ma and Mitchell. And then that's in the middle of the page. And then at the end of the page, it gives the motivation to combine Golden with the Mitchell-Ma combination. The board approvingly cited that page on appendix page 10. This was not specifically challenged, something challenged before the board. So I'm frankly confused as to why there's an allegation that there wasn't any motivation to combine given. Do you know precisely what the board meant when it says, at least suggests? And there is some citation. It's not just a mere conclusory statement. But you want to walk us through how we're supposed to evaluate that? Sure. First, with the dual command limitation, I think it's, I will concede it's a little confusing because I think the board at the outset of the decision finds that Mitchell teaches the dual command limitation. And that's at the bottom of appendix page seven onto the top of appendix page eight. And they say, we see no error in the examiner's reliance on Mitchell for teaching the command transmissions recited in claim one. And then there's some more explanation citing to the examiner's final rejection. And I think that that finding is well supported in the evidence that the dual command limitation is just the idea that you're pressing a button and you're causing both the TV to change a channel and the website to load on your remote. Well, Mitchell does exactly that. The only, I think, qualm that Appellant has is that there's the intermediate involvement of the set-top box. But I don't think that intermediate involvement of the set-top box erases the causation. Because in Mitchell, you're pressing a button, you're changing a channel, the set-top box is sending you back a signal saying load a website, and the website is loaded. So your button press is causing both of the commands to take place, regardless of the fact that the set-top box has some intermediate involvement. So I don't think we even have to get to the suggest issue. I know that the board decision later on, on the dual command limitation, discusses, uses the word suggest. But I think at the bottom of appendix page seven to the top of appendix page eight, you have a clear finding that. Well, let's suppose I don't see that as a clear finding. Why don't you address the suggest issue? Sure, sure. Well, I think for the dual command limitation, it's just this idea that there's this intermediate involvement of the set-top box. Where? No, I don't want your idea for why it's suggested. I want to see where the board articulated a rationale for why it suggests it. Tell me what page of the opinion I can find that. We're looking at the top of appendix page nine, where the board says, Mitchell at least suggests that interacting with the user interface element would not only cause the remote device to request the media with the channel, but also that information related to that program. And then it's got this numbered sentence. This scenario, the set-top box would number one, number two, number three. So I think that's where the board is explaining its rationale for suggestion, where it may not be a direct, there may not be a direct dual command because of the involvement of the set-top box, but the end result is the same. You're pressing a button. You're getting two commands to happen. So that would certainly suggest the dual command limitation. I think that was the board's rationale. Moving on to the mapping limitation. Where does it say, as is often the case, I wish the board was as articulate as you are. Because everything you just said sounded really convincing. The problem is I don't read that paragraph the same way. That paragraph doesn't say what you just said, which is you press the button and both things ultimately happen. That's what is missing for me. What bothers me about it is I don't know what the board means by suggest. I'll tell you, I've never seen a board opinion in my 13 years on the bench that has been written this way. I don't know if you see them a lot. Do you see them a lot? To be honest, I haven't seen one exactly like this. No, me neither. So I've never seen a board adopt the suggest language, so I'm not sure what to make of it. But I started trying to think, as a matter of law, what does it mean if a reference discloses something, inherently discloses something, suggests something? How should it be treated? And I thought, like, this is what suggest means to me. I have a disclosure for a five-pronged fork. And then there's a sentence in there that said it might be cheaper and equally good to reduce the number of prongs. Did that technically disclose a three-pronged fork? No. But it certainly suggested that you might want to make a three-pronged fork, maybe even a two-pronged fork. You know, that's what suggest means to me. The reference points you towards doing something. I guess that's kind of, I'm trying to, I'm trying to get you to help me understand, since I've never seen an opinion that uses and relies on this suggest thing, and it appears so often in this opinion, it's kind of confusing to me. What should the test be? Like, what does a reference have to do to meet the suggests test? Because I also couldn't find any federal circuit opinion that ever addressed this either. So. I think this is sort of a variation on what KSR was getting to with a predictable variation. So that if you have a disclosure and then the claim. But wouldn't that just be obviousness? I mean, wasn't KSR getting to obviousness? I mean, isn't this suggest test not about motivations to combine? Isn't this suggest test about whether a reference should be read as teaching something or not? Well, I think, I mean, there's precedent saying that obviousness, you're looking at both what a reference discloses and what it suggests. So suggest has to be something different than what it discloses. So I think that you're looking at, based on what you have in the reference, and combined with the skill and the art, what that would lead to or what that would suggest. And I think that this is kind of. Isn't that obviousness? I'm trying to understand how what you're saying isn't, for example, when a reference totally fails to point someone somewhere on one element. Reference discloses everything but one element. And then you argue, which I've seen the PTO certainly do and we've upheld it, that you don't need a second reference that teaches it common sense. It would have been obvious to do so. And that's KSR. But you always articulate a reason. That's a reason. You say at least common sense, logic, people with skill and the art are doing this all the time. You say something about it. And where I'm struggling is that that feels like what the board did here for each of these elements, but without giving me the reason. It feels to me like they did less than they would do for obviousness, and yet they're relying on this for the disclosure aspects of the obviousness inquiry. Does that make any sense? Yeah, and I think I would agree that this, the way that the board wrote this decision is similar to the idea that you have a reference and it may not be exactly what the claim says, but you could modify it or change it to get to the claim. And I think that they're saying it in a different way. And I think that if you're looking at the mapping limitation, the mapping limitation is just this idea that before you press the button, you know that that button is going to lead you to a website. And so the board found that Mitchell has that, has the concept of mapping disclosed. So in Mitchell... So can you point out, are you talking about page, are we now on nine? I'm looking at, I mean, this is where the board discusses the mapping limitation. Yeah, I'm trying to figure out where the board sort of explains how Mitchell kind of gets you there. I mean, this is appendix page 10, that first full paragraph. So the board is looking at Mitchell's disclosure of caching, which is this idea that before the websites are loaded, they're sent ahead of time to the remote and stored on the remote. And then Mitchell discloses that in one embodiment when it's time for that website to pop up, a prompt will come up saying, you know, do you want to load this? And the user presses a button and the website loads. So before the user presses that button in Mitchell, the device knows that it's mapped to a specific website because the website is stored on the device. And it knows, you know, user presses that button, I load this website. And that's, I mean, that's very similar to what's being done in claim one. The concept that before you press a button, there's a correlation or connection between the button press and the loading of the website. And so the board cites Mitchell paragraphs 61 and 68, which is where this discussion of caching and having the website load based on a prompt, a button press and the user is disclosed. So there is explanation there of what we're looking to in Mitchell. You know, I could see that there's not, there's not this further step of further, more thorough explanation of, you know, why the suggestion, why the use of the word suggestion. And I think that given the... My problem is that I feel like we just leapfrogged from a reference could disclose something. A reference could inherently disclose something means it's always true. It's kind of a hard thing to... A reference could suggest something. Like that's kind of, I don't see the board having done any of the kinds of stuff that is permissible under KSR to explain to me why it would be obvious. I'm not saying it's not. I'm just really struggling with the way this opinion is written. At a minimum, even if this case gets affirmed, can you please, and I'm being deadly serious, go back, send a memo to everybody in the solicitor's office to never allow the board to write opinions like this? I mean, because it's just confusing. And I think that we're struggling with how to understand this opinion. And if we do happen to understand it the way you want it to be understood, please don't confuse that for thinking it's written well or correctly. I understand. And I think that you can always look back to the Supreme Court precedent about agency's reasoning. It may not be necessarily clear, but the decision provides the pathway there. And I think that at minimum, I mean, we're there with this decision just because of the very close similarity between Claim 1 and Mitchell. I mean, I think that as you were discussing earlier, I would say that Mitchell is a more sophisticated version of Claim 1. But there's almost no difference. And, yes, I hear what you're saying. So I think that while you may find this board decision unclear, I think that at least with this case, and I understand. I just don't want this to become a new pattern for me. And I understand, and I will surely pass that message on to the board, that at least in this case, the path can be seen to how you can get to the result that the board reached. Because, I mean, the dual command is in there in Mitchell. The mapping, there is a – the concept of mapping is in there in Mitchell. Is it exactly how it's done in Claim 1? Maybe not. But you can see how one of ordinary skill, knowing what they would know based on Mitchell could get you to Claim 1. Because all Claim 1 really is, is you set up a button. You know, you press the button. CNN turns on. CNN.com loads on your tablet – or your remote. And every time that happens, it's just – it's a preset. There's no real, you know, intelligence there. No real flexibility like what you have in Mitchell, where Mitchell you're loading multiple websites per show. You're getting websites based on the context of the program, not just the channel. I mean, there's just a lot more features in Mitchell that's just not here in Claim 1. So I guess I would leave you with that. Thank you. Thank you. I just wanted to touch on the suggestion discussion. I mean, I think it's very clear the board's decision – the decision on rehearing is insufficient. It's flawed. It needs to be reversed. I think at the very most, I kind of agree. Maybe it's going to some type of motivation to modify or alter Mitchell. Maybe that's what the board is trying to say. But if that's the case, then it needs to explain why you would modify Mitchell to arrive at the dual command limitation and to arrive at the mapping limitation. And there's no discussion whatsoever of that. Really what it is is this is what Mitchell – excuse me – this is what the claim language is. This is what Mitchell discloses. It doesn't disclose the claim language, but it suggests it, and that's it for both those limitations. I think this court's precedent requires a reversal because, I mean, even in cases where the court has found that a district court or the board has said common sense would lead you there, even in those cases they've said you have to provide an explanation as to why that common sense would lead you to the claim limitations and to the intervention as a whole. If there's no other questions. Thank you.